UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY ROBERTS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-00508-SEB-DKL |
| | ) | |
| DMG AMERICA HEALTH AND | ) | |
| WELFARE PLAN, | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant's Motion to Remand to the Claims Administrator to Complete Its Administrative Review, or, in the Alternative, to Dismiss for Failure to Exhaust Administrative Remedies [Docket No. 10], filed by Defendant, DMG America Health and Welfare Plan ("the Plan"), on June 15, 2011. Plaintiff, Anthony Roberts, brings this action pursuant to the civil enforcement provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA"). Having previously participated in the Plan, Mr. Roberts alleges that the Plan wrongfully denied his claim for long-term disability benefits. The Plan rejoins that Mr. Roberts's failure to cooperate in the administrative review of his claim warrants remand or dismissal. For the reasons stated in this entry, the Court **GRANTS** Defendant's Motion to Remand to the Claims Administrator and **DENIES** Defendant's Motion to Dismiss.

**Factual Background**

DMG America, Inc. ("DMG") is an Illinois corporation doing business in the State

of Indiana whose purpose is to market, repair, and sell machines used for metal-cutting and milling operations.[1]  Compl. ¶ 2.  As part of its employee welfare benefits package, DMG offers disability insurance coverage to qualified participants in the Plan.  *Id.* ¶¶ 3-4.  DMG contracts with Sun Life and Health Insurance Company ("Sun Life") to provide long-term disability insurance, and Sun Life is the payor.  *Id.* ¶ 4.  Claims are initially determined by Sun Life and, if denied, may be appealed.  *Id.*

Anthony Roberts is a citizen of Indiana and a former DMG employee.  Compl. ¶¶ 1, 6.  He worked as a field service engineer for DMG until April 13, 2009, when his employment was terminated.  *Id.* ¶ 6; Def.'s Br. Ex. 4 at 2.  During his tenure at DMG, Mr. Roberts participated in the Plan.  Compl. ¶ 6.

Pursuant to the Plan, to claim monthly benefits for a period of disability, an insured employee must comply with the following terms found in Part 4 of his policy:

> 1. You must send <u>Proof</u> to us that you have become <u>Disabled</u>;
> 2. You must be insured under the policy at the time your Disability commences;
> 3. You must be under the regular and continuing care of a Physician for the Sickness or Injury causing your Disability; and
> 4. You must have completed the Elimination Period shown in the INSURANCE SCHEDULE.

Def.'s Br. Ex. 2 at 1.  "Proof" is defined as "any information that is: 1) [r]equired by [Sun Life] under the terms of the policy; and 2) [s]atisfactory to [Sun Life]."  *Id.*  Insureds may be expected to provide medical records, financial statements, or other related documents to satisfy the Plan's requirement of proof.  *See generally* Def.'s Br. Exs. 2, 3.  Social

---

[1] BLOOMBERG BUSINESSWEEK (Oct. 6, 2011), http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=45736208.

Security benefits are analyzed contemporaneously; they are an offset to any long-term disability claim that might become payable. Def.'s Br. Ex. 3 at 2. Among other exclusions, the Plan specifies that no long-term disability payments will be made "[f]or any Period of Disability due to or resulting from . . . participation in the commission of a felony. . . . [f]or any day that [the insured is] confined in a penal or correctional institution for conviction of a criminal or public offense." Def.'s Br. Ex. 4 at 2.

Mr. Roberts describes himself as a "disabled insured participant under his policy and the Plan." Compl. ¶ 9. He has consulted physicians in recent years to seek help for his alleged chronic back pain. Def.'s Br. Ex. 3 at 1. On March 8, 2010, he received approval for a Social Security disability claim that was made retroactive to May 16, 2007. *Id.* Between these 2007 and 2010 dates, Mr. Roberts experienced two setbacks related to his health and employment. He was involved in a motor vehicle accident in June 2008, which resulted in the death of his son and the filing of criminal charges against him. Def.'s Br. at 4. Then, beginning January 16, 2009, he reported "work cessation due to stress and panic disorder . . . with additional medical information as of April 2009 indicating aggravation of a prior back problem." Def.'s Br. Ex. 4 at 2. A report from his physician indicated that after his April 13, 2009 severance from DMG, he was encouraged to file for long-term disability benefits. *Id.*

Although the date of filing is unclear from the record, Mr. Roberts did apply for long-term disability benefits and received "a period of payments." Compl. ¶ 7. On approximately June 9, 2009, he was denied continuing benefits under his insurance

policy. *Id.*; *see also* Def.'s Br. Ex. 2 at 2 (listing eight missing items of proof Mr. Roberts had not submitted and claiming insufficient information to admit liability on his claim). He appealed the denial of his claim on August 30, 2010, citing "numerous physical impairments that qualif[ied] him for continuing benefits" under the Plan. Def.'s Br. at 2; Compl. ¶ 8. Paul Briere, the Sun Life benefit officer assigned to the case, sent Mr. Roberts a letter dated September 15, 2010 to acknowledge his appeal.[2] Def.'s Br. Ex. 3 at 1. Mr. Briere completed an initial review of Mr. Roberts's file and sent him a follow-up letter dated October 5, 2010. *Id.* In this letter, he expressed confusion regarding "what changed in Mr. Roberts'[s] medical status" in 2009 and why "Social Security appears to have approved [Mr. Roberts's] disability claim with them to include a period of time when his [long-term disability] file with [Sun Life] establishes that he was working." *Id.* Mr. Briere made four specific requests at this time:

> (1) In order to objectively evaluate Mr. Roberts'[s] current level of functioning . . . I would like for him to participate in a Functional Capacity Evaluation [FCE]. . . . Mr. Roberts will be free to refuse any part of the evaluation which he feels would cause him undue discomfort or pain.
> (2) I will also be referring Mr. Roberts'[s] medical records to an independent outside orthopedic specialist with the request for that specialist to contact Mr. Roberts'[s] physician Dr. Shapiro for a phone consultation . . . [for] an historical/clinical perspective on his evaluation of Mr. Roberts . . . .
> (3) I would like to request from you any additional medical records that were provided to Social Security that may not have been previously furnished to [Sun Life], and which Social Security utilized in their determination.
> (4) Please provide me with a copy of the [Social Security] award letter documenting the dates and specific retroactive and current amounts of Mr. Roberts'[s] Social Security Benefits, those benefits being an offset to any LTD

---

[2]Defendant did not append the September 15 letter as part of its briefing. However, Defendant's Exhibit 3 specifically references this letter. Because Plaintiff does not dispute the existence of a September 15 letter, we accept the truth of its existence.

benefits that might become payable.

*Id.* at 2.

Meanwhile, Mr. Roberts's case took a slight detour in October 2010 for reasons related to the 2008 motor vehicle accident.[3] Def.'s Br. Ex. 4 at 2. He entered into custody of the Indiana Department of Correction on approximately October 25, 2010 and, from Sun Life's perspective, was not in a "stabilized situation" within the Department as of late November. Thus, on December 15, 2010, Mr. Briere dispatched a letter to Mr. Roberts's attorney to summarize his October requests. *Id.* at 1. He noted that he had reviewed Mr. Roberts's file again and that a FCE might no longer be necessary. Further, he requested that Mr. Roberts's attorney: (1) review her records to ensure that Sun Life had all information provided to the Social Security Administration; (2) provide any records of psychological treatment sought by Mr. Roberts (or indicate the absence thereof); and (3) submit to him "a copy of the Social Security award letter documenting the dates and specific retroactive and ongoing award amounts to Mr. Roberts." *Id.* at 3.

Mr. Roberts's attorney responded by letter dated January 10, 2011 and concurred that a FCE would not be beneficial. She responded to Mr. Briere's specific requests as follows:

(1) In response to the request that she review her records for proof that Sun Life had all information Mr. Roberts submitted to the Social Security Administration, she answered, "Please see the favorable [Social Security] decision for details."

---

[3]Mr. Roberts does not dispute that charges were filed against him or that he spent time in custody of the Department of Correction.

(2) In response to the request that she provide records of psychological treatment sought by Mr. Roberts, she answered, "[A]ny counseling was done at Meridian Medical Services. Mr. Roberts completed a release and sent that to you."

(3) In response to the request that she submit a copy of the Social Security award letter, she provided no answer. She also indicated that she had enclosed a copy of all medical records from Dr. Shapiro, Mr. Roberts's physician, and that she had no additional documents to forward. Def.'s Br. Ex. 5 at 1.

Mr. Roberts alleges that on March 14, 2011, a representative of his attorney attempted to contact Mr. Briere for an update on the status of his appeal. Pl.'s Resp. Br. Ex. A ¶ 3. According to this representative, appeals analyst Amy Hall returned her call on March 18 to confirm that she had replaced Mr. Briere on the appeal two weeks prior to that date. In the course of the call, Ms. Hall indicated that she was "in the process of copying the file to send out for a peer review." *Id.* ¶ 5.

On April 14, 2011, Mr. Roberts filed his Complaint for Review of Final Decision Denying Disability Insurance Benefits against the Plan with this court. He alleges that the Plan's denial of his application for continuing disability benefits was arbitrary and capricious. Compl. ¶¶ 8-10. Moreover, he contends that Sun Life's role in the matter is conflicted because it resolves and pays any claims. *Id.* ¶ 13. He seeks reinstatement of disability benefits, judgment commensurate with benefits he claims are past due, interest, attorneys' fees, and penalties for "[Sun Life's] fiduciary violation." *Id.* ¶ 14. The Plan has filed a motion to remand for completion of administrative review; in the alternative, it seeks dismissal for Mr. Roberts's alleged failure to exhaust administrative remedies.

## Legal Analysis

### I. Standard of Review[4]

Benefit determinations in ERISA cases arising under 29 U.S.C. § 1132(a)(1)(B)[5] are reviewed by the court de novo "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants its administrator discretion to pay or deny claims, the standard of review is "arbitrary and capricious." *Urbania v. Cent. States, Se. & Sw. Areas Pension Fund*, 421 F.3d 580, 585 (7th Cir. 2005). Abuse of discretion is "a serious error of judgment, such as reliance on a forbidden factor or failure to consider an essential factor." *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991).

ERISA does not require plaintiffs to exhaust their administrative remedies before filing suit. Section 502 of the statute, 29 U.S.C. § 1132, "is silent as to whether exhaustion . . . is a prerequisite to bringing such a civil action." *Powell*, 938 F.2d at 825. However, ERISA does mandate reasonable internal claims procedures. 29 U.S.C. § 1133; *see also* 29 C.F.R. § 2560.503-1(b) (providing that all employee benefit plans "shall

---

[4]The defendant labels its motion under review a motion to remand or, alternatively, to dismiss. However, neither party's brief discusses the topic of dismissal in any detail, provides an appropriate standard of review, or discusses controlling precedent on dismissal for failure to exhaust administrative remedies. As such, we need not thoroughly review this matter in terms of dismissal and will focus our analysis on the topic of remand.

[5]29 U.S.C. § 1132(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

establish and maintain reasonable procedures governing . . . claims procedures" and setting forth a definition of "reasonable"). These procedures are in place to ensure that most claims will be determined by the plans, not the courts. *Powell*, 938 F.2d at 826. Therefore, "a district court may properly require exhaustion of administrative proceedings prior to the filing of a claim involving an alleged violation of an ERISA statutory provision." *Id.*

A plaintiff is typically excused from his failure to exhaust administrative remedies in two situations: (1) where no such remedies are available, and (2) where pursuing such remedies would be futile. *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000); *see also Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir.1997).

## II. Discussion

Mr. Roberts's complaint alleges that he was denied benefits due to him by virtue of his participation in DMG's disability plan. This substantive right can properly be enforced through a civil action brought pursuant to section 502 of ERISA. Although, as discussed above, section 502 does not explicitly demand exhaustion of administrative remedies, the Seventh Circuit has previously held that, as a matter of sound policy, district courts generally *should* enforce exhaustion requirements. *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1245 (7th Cir. 1983) (citing *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)). Our circuit has for some time recognized that Congressional intent is best realized by granting district courts such discretion. *Gallegos*, 210 F.3d at 808. This

policy of judicial administration is designed to limit frivolous lawsuits, promote non-adversarial dispute resolution, and decrease the resources expended to settle claims. Moreover, requiring exhaustion of administrative remedies furthers the goal of a complete record if judicial review becomes necessary. *Id.*; *see also Stark v. PPM Am., Inc.*, 354 F.3d 666, 671 (7th Cir. 2004). "These advantages outweigh a plaintiff's relatively minor inconvenience of having to pursue [his] claims administratively before rushing to federal court." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996).

Neither party in this action disputes the necessity of exhausting administrative remedies before litigating in this court. Rather, the core issue is whether Mr. Roberts sufficiently complied with Sun Life's requests during the appeals process. The Plan argues that Mr. Roberts seeks to "have it both ways"—that is, to comply partially with Sun Life's review process and then, following Sun Life's repeated requests for information, to sue in federal court. Def.'s Br. at 5. It is the Plan's position that no Sun Life benefit officer—be it Mr. Briere or Ms. Hall—could have resolved Mr. Roberts's appeal due to the incomplete record. *Id.* at 6. Specifically, the Plan identifies the following items which Mr. Roberts was asked to provide but which he did not submit to Mr. Briere:

> (1) any additional records that were provided to Social Security not already a part of the LTD claim file or a confirmation that there were no additional documents; (2) a copy of the [S]ocial [S]ecurity award letter documenting the dates and specific retroactive and current amounts of Plaintiff's [S]ocial [S]ecurity benefits[;] . . . (3) all records pertaining to treatment of mental health issues with a psychologist or confirmation that such treatment was not in fact sought by Plaintiff; . . . [or (4)] further insight relative to the connection between the motor vehicle accident . . . and his claim for disability benefits . . . nor his eventual

confinement and the resulting closed benefit period under the Policy.

*Id.* at 4-5 (internal citations omitted). We address each item in turn, keeping in mind that "[e]xhaustion of administrative remedies is a doctrine . . . to a large extent judge-made"; it does not require the plaintiff "to run the gauntlet of internal administrative appeals." *Gibson v. U.S. Forest Serv.*, 55 F.3d 1325, 1326 (7th Cir. 1995).

The Plan first contends that Mr. Roberts failed to submit additional records he had previously given to the Social Security Administration or, alternatively, an attestation that no such records exist. Its December 15, 2010 letter to Mr. Roberts's attorney states that she had previously confirmed having sent all such records to the Plan at that time. In the same letter, Mr. Briere requested that Mr. Roberts's counsel re-review her records to confirm that Sun Life had the same documents provided to the Social Security Administration. Def.'s Br. Ex. 4 at 3. Mr. Roberts rejoins that his attorney's January 10, 2011 response—"I do not have any additional documents to forward"—should have disposed of this issue. Def.'s Br. Ex. 5. We agree with Mr. Roberts and find that his attorney's response regarding this piece of information constitutes sufficient compliance with the Plan's review process.

Next, the Plan faults Mr. Roberts's refusal to give Sun Life the Social Security award letter he received on March 8, 2010. Mr. Roberts responds that the letter "was not relevant to Sun Life's decision as to whether [he] was disabled." Pl.'s Resp. Br. at 2. Because the Plan allegedly already has the administrative law judge's decision describing *why* he was disabled, Mr. Roberts contends that the Plan "cannot in good faith claim that

this in any way delayed its ability to review [his] claim." *Id.* at 3. We find no merit in his argument. In our view, neither Mr. Roberts nor his attorney is at liberty to determine the relevance of the Social Security award letter to Sun Life's administrative review process. 29 C.F.R. § 2560.503-1 requires only "reasonable claims procedures," which affords Sun Life some latitude. For procedures involving disability benefits, the review process must comply with subsections (b), (c)(2), (c)(3), and (c)(4) of this regulation. 29 C.F.R. § 2560.503-1(d). None of these subsections requires a plan administrator to ask only for documents which the insured may deem "relevant" to the resolution of his claim. Moreover, the Plan's policy made two things very clear to Mr. Roberts: (1) that he was to submit proof that he had become disabled, and (2) that "proof" was information Sun Life required and found satisfactory. Sun Life's repeated requests for the Social Security award letter demonstrate that for reasons unbeknownst to Mr. Roberts, this information *was* relevant to his claim from the administrator's perspective. "Please see the favorable decision for details," as Mr. Roberts's attorney instructed Mr. Briere, was therefore an improper response. Until Mr. Roberts submits his award letter as directed, he has not fully exhausted his administrative remedies.

Thirdly, the Plan alleges that Mr. Roberts was uncooperative regarding his mental health records. Mr. Roberts counters that he "had executed a release for Sun Life to obtain this information when the appeal was first initiated." Pl.'s Resp. Br. at 3. Were this the case, we would conclude that he had complied with the review process. Regrettably, the evidence on record does not clarify the situation. Sun Life's March 11,

2010 letter denying Mr. Roberts's initial claim listed a completed medical records release form as one of many items he had not submitted. Def.'s Br. Ex. 2 at 2. By December of that year, Sun Life had yet to receive this form—or, for that matter, any confirmation of psychological treatment. Def.'s Br. Ex. 4 at 3. Faced only with Mr. Roberts's attorney's assertion that "[i]t was our understanding that Ms. Johnston [of Sun Life] was going to request those [records]," we cannot conclude that Mr. Roberts fully cooperated with the claims procedure. Def.'s Br. Ex. 5. We therefore place the onus on Mr. Roberts to submit proof of this counseling in whatever reasonable form Sun Life may require.

Finally, the Plan asserts that it cannot resolve Mr. Roberts's appeal without "further insight" pertaining to his 2008 car accident and related incarceration. Mr. Roberts alleges that he "can only assume that the defense is referring to the [December 15, 2010] statements of Mr. Briere." Pl.'s Resp. Br. at 3. He also characterizes Sun Life's posture not as requesting information, but as "stating one of the challenges raised by . . . evidence" he believes to be self-explanatory. *Id.* We are mindful that, as Mr. Roberts argues, Mr. Briere did not explicitly ask him to describe the 2008 accident; similarly, we understand that it might seem unfair to raise this issue at a later date. Still, we note that Sun Life *did* ask for such information before March 2010, as indicated in the March 11 letter denying disability benefits. Def.'s Br. Ex. 2 at 2. Mr. Roberts has been on notice since at least that time that Sun Life required "information pertaining to a motor vehicle accident on February 10, 2008 . . . [including] if an accident report was completed and if no fault payments were made to Mr. Roberts." *Id.* He is not entitled to assume that

this request has somehow disappeared or become irrelevant to his underlying claim for benefits. Assuming that Sun Life needed this information to determine the amount of any benefits owed to Mr. Roberts, we find that full exhaustion of Mr. Roberts's administrative remedies contemplates his compliance with this request.

We also address Mr. Roberts's contention that he should be deemed to have exhausted his administrative remedies due to Sun Life's alleged tardiness in issuing a decision. Mr. Roberts urges the Court to interpret 29 C.F.R. § 2560.503-1(i)(4) to mean that, following any tolling of benefit determination due to a claimant's failure to submit information, "a response [from Plaintiff] is all that is required to end the tolling under ERISA." Pl.'s Resp. Br. 5 at 5 n.1. Put otherwise, Mr. Roberts suggests that Sun Life was required to decide his appeal after receiving his attorney's January 10, 2011 letter addressing the deficiencies we have discussed above, "even if . . . [these] deficiencies remained." *Id.* Again, we do not agree that this argument absolves Mr. Roberts.

Under 29 C.F.R. § 2560.503-1(i)(4), a plan may grant tolling extensions as it awaits documents it requested from a particular claimant. *Amich v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 10-cv-105, 2011 WL 815102, at *11 (E.D. Wis. Feb. 28, 2011). Such extensions are permissible only where the information is "necessary to decide a claim." 29 C.F.R. § 2650.503-1(i)(4). Here, because we find that Sun Life made its requests in good faith, the tolling was legally effective. Although the Seventh Circuit has not ruled on how a claimant must answer in order to satisfy the regulatory standard of "respond[ing] to the request for additional information," we are guided by factors used to

determine whether a benefits plan has properly responded to a claimant's requests for information. Courts faced with this question generally consider "(1) the length of delay; (2) the number of requests made and documents withheld; (3) whether there is evidence . . . [of] bad faith; and (4) whether the failure to provide documentation [was prejudicial]." *Hakim v. Accenture U.S. Pension Plan*, 735 F. Supp. 2d 939, 955 (N.D. Ill. 2010); *see also Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002). Having already determined that Mr. Roberts's cooperation with the Plan leaves much to be desired, we need not march through this analysis. The record establishes that Mr. Roberts received several requests for necessary information and, as previously discussed, refused to comply for nearly half a year to the Plan's detriment. In light of the lengthy procedural history between the parties, we decline to find that Mr. Roberts's counsel's January 10, 2011 letter was a "response" triggering Sun Life's duty to render a final decision.

It is well-settled in the Seventh Circuit that "the court is not in the place to make the determination of entitlement to benefits." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 776 (7th Cir. 2003). With this holding in mind, this court finds that dismissal of Mr. Roberts's lawsuit is unwarranted at this time. A full and fair review of his appeal regarding continuing disability benefits is the appropriate remedy. Because the Plan provided Mr. Roberts specific instructions regarding how and where to send appeal materials on more than one occasion, we find that this suffices as meaningful access to review procedures. Mr. Roberts has ample access to a reasonable administrative process, and we do not believe that proper completion of this process

would be futile. Accordingly, his failure to comply fully with Sun Life's instructions forecloses his ability to claim that he has exhausted *all* administrative remedies.

## Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is **DENIED**, this action is stayed, and the matter is **REMANDED** to the claims administrator to allow the parties to complete administrative review of Mr. Roberts's claim for disability benefits. Mr. Roberts shall comply with Defendant's existing requests for information as detailed in this entry. Failure to do so within reasonable deadlines set by Defendant shall result in dismissal of this action without prejudice.

IT IS SO ORDERED.

Date: _____11/03/2011_____

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Edna Sybil Bailey
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
edna.bailey@wilsonelser.com

Melissa A. Davidson
CHARLES D. HANKEY LAW OFFICE
mdavidson@hankeylawoffice.com